# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ALBERT REGINALD ROBINSON,

   Defendant-Appellant.

UNPUBLISHED<br>
December 16, 2014

No. 311356<br>
Macomb Circuit Court<br>
LC Nos. 2011-002189-FC

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ALBERT REGINALD ROBINSON,

   Defendant-Appellant.

No. 314604<br>
Macomb Circuit Court<br>
LC No. 2011-003549-FH

Before: SAWYER, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In Docket No. 311356, defendant appeals as of right his jury-trial convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b, and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. The trial court sentenced him to 168 months to 400 months' imprisonment for the CSC I conviction and 80 months to 120 months' imprisonment for AWIGBH. Defendant was also required to register as a sex offender and is subject to lifetime electronic monitoring pursuant to MCL 750.520n. In Docket No. 314604, defendant appeals by delayed leave granted his guilty pleas to two counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b). The trial court sentenced him to 100

-1-

months to 15 years' imprisonment on each CSC III count in accordance with his *Cobbs*[1] agreement. We affirm.

Defendant contends the admission of other acts evidence under MRE 404(b), involving M.B. and A.J., during trial for CSC I and AWIGBH involving J.H.,[2] constituted an abuse of discretion and that such evidence was unduly prejudicial. A trial court's ruling to admit evidence pursuant to MRE 404(b) is reviewed for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

The admissibility of prior bad acts evidence is governed by MRE 404(b). As discussed by the Michigan Supreme Court in *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000):

> In [*People v*] *VanderVliet*, [444 Mich 52; 508 NW2d 114 (1993)] we adopted the approach to other acts evidence enunciated by the United States Supreme Court in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988). That approach employs the evidentiary safeguards already present in the rules of evidence. First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [Citations and quotation marks omitted.]

The burden is on the prosecution to establish the relevance of the proposed evidence. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "'Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence.'" *Id.*, quoting *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998); MRE 401. In accordance with MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Sabin (After Remand)*, 463 Mich at 58. Unfair prejudice does not equate to any prejudice, but instead refers to "'the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.'" *People*

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[2] M.B. was the victim in the CSC III cases.

*v Pickens*, 446 Mich 298, 336–337; 521 NW2d 797 (1994), quoting *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984).

The prosecutor sought to introduce prior bad acts evidence pertaining to M.B. and A.J. This Court in *People v Gibson*, 219 Mich App 530, 533; 557 NW2d 141 (1996), quoting *People v Oliphant*, 399 Mich 472, 488; 250 NW2d 443 (1976), has found, "In a sexual assault prosecution, evidence of prior acts is admissible under MRE 404(b) if it 'tend[s] to show a plan or scheme to orchestrate the events surrounding the rape of complainant so that she could not show nonconsent.'" In *Gibson*, prior acts evidence was deemed admissible under MRE 404(b) to demonstrate a plan or scheme, and was factually similar to the allegations by J.H.; for instance:

> The assault in each case involved a woman who defendant knew was a crack cocaine user. In each case defendant took affirmative steps to be alone with the complainant. In each case defendant asserted not just the defense of consent, but consent in the context of an exchange of sex for drugs. This demonstrates that defendant had a plan for choosing his victim on the basis of knowledge that she was a crack user that would enable him to claim a sex-for-drugs swap should he be accused of the crime. [*Gibson*, 219 Mich App at 533.]

In all three incidents pertaining to A.J., M.B., and J.H., defendant proffered his victims alcohol and/or drugs to secure their accompaniment to a local motel. Once at the motel, defendant assaulted the women and prevented them from leaving the room. The assaults on M.B. and J.H. were similar in that defendant struck both in the face. Defendant asserted, as a defense to the sexual assault charges, that both J.H. and M.B. were prostitutes and "crack-whores" and that the sex was consensual based on his provision of illegal substances.

The other bad acts evidence was relevant under MRE 402, because it demonstrated that defendant employed a "similar method and defense in a prior case[, which] is probative of whether he employed the same means in anticipation of using the same defense if accused." *Gibson*, 219 Mich App at 533. The allegations of the victims and defendant's asserted defense in the cases were similar. In J.H.'s case, the other bad acts evidence was used to demonstrate plan or scheme, given J.H.'s inability to testify regarding certain events in the motel room after defendant's alleged physical assault resulted in her unconscious state during the sexual assault. While, in general, evidence of separate sexual acts engaged in by a defendant with other individuals is not admissible under MRE 404(b) to bolster the credibility of a complainant or victim, such other acts evidence is admissible, as used here, to demonstrate a defendant's use of a common plan to demonstrate that it is unlikely the victim consented to the conduct, including plans or schemes used by a defendant "to give the appearance of consent and make proof of nonconsent difficult." *Oliphant*, 399 Mich at 491.

The prosecutor proffered evidence to demonstrate that defendant had a common scheme or plan in soliciting women to accompany him to motel rooms for sexual and physical assaults. This is a proper purpose commensurate with MRE 404(b). The probative value of the evidence was not outweighed by its prejudicial effect. Relevant evidence is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded."

*People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003) (citation and quotation marks omitted).

The evidence demonstrates a consistent plan or scheme by defendant of getting women to a motel and later asserting that sexual intercourse was a mutual exchange and consensual. The similarity between the incidents is extensive, demonstrating defendant's manner of execution, treatment of the victims, and later assertions in his defense. Any reference to the incident involving A.J. was brief and was primarily comprised of defendant's denials. Although the evidence pertaining to M.B. was significantly more detailed, the similarities between the incident involving M.B. and that pertaining to J.H. demonstrated the greatest similarity in terms of defendant's modus operandi. Finally, the trial court provided a limiting instruction to the jury regarding the proper use of this evidence. Such an instruction serves to avoid the danger of unfair prejudice, because jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant next contends that he was deprived of his right to an impartial jury because the prosecution dismissed a juror solely on the basis of race in violation of *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), overruled in part on other grounds by *Powers v Ohio*, 449 US 400; 111 S Ct 1364; 113 L Ed 2d 411 (1991). An issue pertaining to whether a defendant was denied his Sixth Amendment right to an impartial jury is reviewed by this Court de novo. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). In turn, "the factual findings of a trial court [are reviewed] for clear error, which exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (citation and quotation marks omitted). This Court reviews claims of prosecutorial misconduct de novo. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010).

A criminal defendant is entitled to an impartial jury drawn from a fair cross-section of the community. See *Taylor v Louisiana*, 419 US 522, 537-538; 95 S Ct 692; 42 L Ed 2d 690 (1975). In *Batson*, 476 US at 84, the United States Supreme Court determined that the use of a peremptory challenge to strike a juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Initially, the person contesting the use of the peremptory challenge is required to make a prima facie showing of discrimination based on race. *People v Bell*, 473 Mich 275, 282; 702 NW2d 128, amended 474 Mich 1201 (2005). Specifically:

> To establish a prima facie case of discrimination based on race, the opponent of the challenge must show that: (1) the defendant is a member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race. The *Batson* Court directed trial courts to consider all relevant circumstances in deciding whether a prima facie showing has been made. [*Id*. at 282-283 (citations omitted).]

After the contesting party establishes a prima facie showing of discrimination, the burden then shifts to the party exercising the peremptory challenge to present a race-neutral explanation for using the challenge. *Id*. at 283. "The neutral explanation must be related to the particular case being tried and must provide more than a general assertion in order to rebut the prima facie showing. If the challenging party fails to come forward with a neutral explanation, the challenge will be denied." *Id*. (citation omitted).

The trial court must determine if the party opposing the peremptory challenge has established "purposeful discrimination." *Id*. Purposeful discrimination is established if the trial court finds that the race-neutral explanation for using the peremptory challenge is not credible. *Id*. "'Credibility can be measured by, among other factors, the . . . [ ] demeanor [of the party exercising the peremptory challenge]; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.'" *Id.*, quoting *Miller-El v Cockrell*, 537 US 322, 339; 123 S Ct 1029; 154 L Ed 2d 931 (2003). If the trial court determines that the proffered explanation for using a peremptory challenge constitutes a mere pretext for discrimination, the challenge will be denied. *Bell*, 473 Mich at 283.

Although Juror 266 was African-American, defendant has failed to establish that the prosecutor's dismissal of this individual was racially motivated or discriminatory. Both the prosecutor and defense counsel dismissed jurors for cause and through the use of peremptory challenges. In explaining his dismissal of Juror 266, the prosecutor indicated the negative response elicited from the proposed juror during voir dire indicating an inability to evaluate or consider a witness's demeanor in the assessment of credibility. In addition, Juror 266 expressed concern, given her medical condition, about her ability to sit for prolonged periods without access to a restroom. These reasons comprised the basis for the prosecutor's dismissal of this juror and demonstrate the complete absence of any racial motivation of discrimination.

Defendant has failed to demonstrate that the prosecutor used a peremptory challenge to dismiss Juror 266 on the improper basis of race. This is consistent with the trial court's determination that the prosecution's reason for dismissing the prospective juror was credible. As such, the prosecutor's use of the peremptory challenge to dismiss this juror cannot constitute misconduct.

Defendant also asserts the trial court erred in failing to suppress his statement to police and that trial counsel was ineffective for failing to have this statement suppressed. "In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission." *Knox*, 469 Mich at 508. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant made statements to police following his arrest in the M.B. case. Defendant contested the use of his statements, and the trial court conducted a *Walker*[3] hearing. Hence, the admissibility of defendant's admissions to police is preserved for appellate review.

---

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

"This Court reviews a trial court's factual findings at a suppression hearing for clear error, and the court's ultimate ruling de novo." *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011). A finding "is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews for clear error a trial court's findings of fact and de novo questions of constitutional law. *Id*. In the absence of a *Ginther*[4] hearing, appellate review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App at 181, 188; 774 NW2d 714 (2009).

"In reviewing a defendant's claim of ineffective assistance of counsel, the reviewing court is to determine (1) whether counsel's performance was objectively unreasonable and (2) whether the defendant was prejudiced by counsel's defective performance." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish prejudice, a defendant must show that the result of the proceedings was fundamentally unfair or unreliable, and that but for counsel's below standard performance there is a reasonable probability that the result would have been different. *People v Messenger*, 221 Mich App at 171, 181; 561 NW2d 463 (1997). In addition, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

The purpose of a *Walker* hearing is to determine the voluntariness of a statement given by a defendant to the police. *People v Manning*, 243 Mich App 615, 624-625; 624 NW2d 746 (2000). "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans*, 166 Mich App 758, 761-762; 421 NW2d 285 (1988).

Coercive police activity comprises a necessary predicate to a finding that a confession is not voluntary within the meaning of the Due Process Clause. To determine whether a statement was voluntary or compelled, it is necessary to evaluate the totality of the circumstances surrounding the statement. *People v Geno*, 261 Mich App 624, 628; 683 NW2d 687 (2004).

The Michigan Supreme Court delineated a nonexhaustive list of factors for consideration in determining the voluntariness of a statement:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

A defendant's knowledge or awareness of his rights before making a confession is an important consideration in determining whether the statement was voluntary. *Frazier v Cupp*, 394 US 731, 739; 89 S Ct 1420; 22 L Ed 2d 684 (1969). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda*[5] are rare." *Berkemer v McCarty*, 468 US 420, 433 n 20; 104 S Ct 3138; 82 L Ed 2d 317 (1984).

Following his arrest and the verbal provision of his *Miranda* rights, defendant queried police regarding the charges he was facing and responded by acknowledging engaging in sexual contact with M.B., but denying rape. Although defendant indicated he would not respond to further questions, he did not ask for counsel. At the police station, during the booking procedure, he was again provided his rights but declined to make a statement. Later, when brought to interrogation by a detective, defendant was again provided with his rights, which he acknowledged by signing the advice of rights form. This interaction was videotaped. The interview was brief, comprising only approximately one-half hour. Police preliminarily questioned defendant to determine his ability to comprehend the questions posed and to determine whether defendant was under the influence of alcohol or any other substance. Defendant was sufficiently cognizant to request medical treatment for a scrape to his forehead he incurred in his cell, and such attention was provided. In addition, this interview was conducted after defendant had been in custody a sufficient length of time to have been provided two meals and other comforts. There was no evidence presented to indicate that police made promises or threats to procure defendant's responses or that defendant, at any time, requested counsel or specifically invoked his right to silence. The trial court's determination that defendant's statements to police were voluntary is supported by the record.

Defendant specifically contends that his use of alcohol and other substances in the period of 24 to 48 hours preceding his arrest rendered his admissions to police involuntary. Police acknowledged that they had included information in their report regarding defendant's use of alcohol the evening before his arrest. Defendant acknowledged consuming alcohol and smoking crack while with M.B., but there is nothing in the record to demonstrate that he remained under the influence of the alcohol or drugs to the point it precluded his ability to function or comprehend the circumstances of his arrest. By the time of defendant's arrest, he had left M.B. and the motel room and arrived at his home. He was sufficiently cognizant of the circumstances of being arrested to query police regarding the charges and deny the allegation of rape. He was able to advocate for himself to receive medical treatment for a facial scrape incurred in his cell and was afforded the opportunity to eat and secure other comforts. There is no record evidence to suggest that defendant lacked any physical or mental control of his faculties, and police, through questioning, determined his ability to understand and respond to their inquiries. Despite

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

defendant's acknowledged use of alcohol and other illegal substances before his arrest and statement, there is no record evidence to demonstrate he was not competent at the time he waived his rights.

Defendant further asserts his counsel was ineffective for failing to secure suppression of his statement to police on the basis of his intoxication. Defense counsel did seek to suppress the statement and procured a *Walker* hearing. During the hearing, defense counsel questioned a police detective and secured his acknowledgement that the police report indicated defendant's recent ingestion of alcohol and drugs, but that he did not subject defendant to drug testing to verify the use and amount. Hence, defense counsel did challenge the admissibility of defendant's statement to police based on the implication that defendant's statement was involuntary due to his inability to comprehend his rights, but was not successful. The trial court denied defendant's request to suppress his statement to police, finding the testimony of the officers to be credible. Because defendant has failed to demonstrate that his statement was made involuntarily, any further efforts by counsel to suppress his statement would have been futile, *People v Ish*, 252 Mich App 115, 118-119; 652 NW2d 257 (2002), and counsel is not required to advocate a meritless position, *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Further, a trial counsel's lack of success in advocating a particular position or argument does not equate to ineffective assistance. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

In his Standard 4 brief, defendant also suggests error in the trial court's failure to provide a jury instruction on intoxication. Defendant's argument is comprised solely of the following statement: "Defendant contends that the trial court erred by refusing to instruct the jury that his intoxication could be a defense to the crime if his drunken state precluded him from knowing or having reason to know that the victim was mentally defective." Defendant's contention is deemed abandoned based on his failure to elucidate his argument or provide authority to support his contention. A defendant is not permitted to leave it up to this Court to search for authority to sustain or reject his or her position. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

Defendant further contends the trial court erred in failing to grant him separate polygraph examinations for each of the cases in which he was charged. This Court reviews questions of statutory interpretation de novo. *People v Phillips*, 469 Mich 390, 394; 666 NW2d 657 (2003).

MCL 776.21(5) provides that "[a] defendant who allegedly has committed a crime under [MCL 750.520b to MCL 750.520e and MCL 750.520g] shall be given a polygraph examination or lie detector test if the defendant requests it." In accordance with MCL 776.21(5), a defendant has an "absolute right to receive a polygraph test once he ma[kes] a request for it." *People v Rogers*, 140 Mich App 576, 579; 364 NW2d 748 (1985). "The purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial." *People v Wilkens*, 267 Mich App 728, 735; 705 NW2d 728 (2005) (citation and quotation marks omitted). However, the results of a polygraph test, regardless of the results obtained, remain inadmissible. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

-8-

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). The Legislature is presumed to have intended the plain meaning of the words expressed. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

The trial court entered an order granting defendant's request for a polygraph examination encompassing both lower court case numbers. At an earlier scheduled examination, defendant became uncooperative and obstreperous, refusing to answer basic questions during the preliminary stages of the examination. Consequently, the polygraph examiner suspended the test because defendant was completely uncooperative.

Defendant's statutory right to a polygraph examination was satisfied. The purpose of the statute was served because defendant was afforded the opportunity to demonstrate his innocence through a polygraph examination, but wasted that opportunity based on his refusal to engage in the requisite process. Had defendant cooperated, the examination could have encompassed and addressed the allegations for each file and the separate charges in accordance with the trial court's order.

Even if we were to conclude that defendant was denied his statutory right to a polygraph examination in the case involving the CSC I charges, reversal is not mandated. To obtain reversal, a defendant is required to demonstrate that, more probably than not, the denial of the right was outcome-determinative. See *Phillips*, 469 Mich at 396-397. According to defendant, the error was outcome-determinative because a completed polygraph examination would have enabled him to avoid trial. Defendant's contention is speculative as he provides no evidence to demonstrate he would have passed a polygraph had it been fully administered or that a favorable result on the polygraph would have led to the prosecutor dismissing the charges. We note that even if defendant had successfully completed a polygraph, the results would not have been admissible at trial. *Id*. at 397.

Defendant contends that insufficient evidence existed to support either his bindover from the preliminary examination or his subsequent conviction of CSC I. Defendant further asserts that the trial judge presiding over the preliminary examination for CSC III exhibited bias, which led to an improper bindover.

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). A challenge to the sufficiency of the evidence is reviewed de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). Conflicts in the evidence are resolved in favor of the prosecution, and circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). In reviewing a challenge to the sufficiency of the evidence, the reviewing court does not interfere with a factfinder's determination of the weight and credibility of the witnesses or the evidence. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). When the gravamen of the defendant's argument is to have this Court reconsider the credibility of the witnesses, it must decline to do so because assessing credibility is the province of the jury. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

In reviewing a trial court's denial of a motion for a directed verdict, this Court reviews the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Because of the inherent difficulty in proving a state of mind, minimal circumstantial evidence will suffice to establish a defendant's knowledge. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

To preserve a claim of judicial bias, a defendant is required to "raise [a] claim of judicial bias in the trial court . . . ." *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Unpreserved challenges of judicial bias are reviewed for plain error affecting substantial rights. *Id*.

The relevant elements of first-degree criminal sexual conduct are contained in MCL 750.520b. "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r); see also *Wilkens*, 267 Mich App at 738.

In addition, identity comprises an essential element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution is required to present sufficient evidence to prove beyond a reasonable doubt that the defendant committed the crimes alleged. *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

Notably, defendant does not raise a sufficiency argument with regard to AWIGBH. He does not deny being with either J.H. or M.B. at the respective motels or engaging in sexual intercourse with them. The only dispute is whether the sexual activity was consensual or forced. J.H. denied working as a prostitute at the relevant time and asserted that defendant struck her immediately upon entry into the motel room, rendering her unconscious during the majority of her time with defendant at that location. J.H. further denied having agreed to engage in sexual relations with defendant. DNA evidence collected from the room and J.H.'s person was linked to defendant. M.B. also testified that she declined to engage in sex with defendant and that he struck her and would not permit her to exit the motel room. M.B. asserted that defendant physically overpowered her and forced her to engage in sexual intercourse. Due to defendant's increasing level of violence commensurate with his ingestion of additional alcohol, M.B. acknowledged she became submissive to his actions because she feared physical retribution, but did not voluntarily consent to the acts.

In support of his contention that the sexual contact with the women was consensual, defendant stresses their history as prostitutes and their willingness and understanding that going to the motel with him would involve sexual activity. He emphasizes that they voluntarily entered his vehicle and accompanied him to a motel, accepting and using the drugs he provided. Defendant denied any coercion or use of physical force in the sexual interactions, asserting any physical assault was attributable to J.H.'s attempt to steal from him or that, in the case of M.B., any injury was sustained in an unknown and unrelated manner during the interim period between her contacting police and being photographed. Defendant further relies on statements by Detroit

-10-

police officers indicating the victims were engaged in prostitution when they encountered defendant and when the alleged events occurred. He also argues that M.B. initially lied to police regarding how she encountered defendant as evidence of her lack of veracity regarding the alleged events leading to the CSC III charges.

At the conclusion of the prosecution's case, defendant moved for a directed verdict, which the trial court denied. Sufficient evidence had been adduced at this point in the trial to support the CSC I charge. As noted, although J.H. could not recall the details of the alleged rape, reasonable inferences arising from circumstantial evidence "can constitute satisfactory proof of the elements of the crime." *Kanaan*, 278 Mich App at 619. Further, premised on the well-recognized precept that the testimony of a victim in a CSC case need not be corroborated by other evidence to support a conviction, MCL 750.520h; *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010), the trial court correctly denied defendant's motion for a directed verdict based on the evidence produced.

Ultimately, the evidence and testimony of defendant, J.H., and M.B. were presented to the jury. Defendant primarily contends that the testimony of J.H. and M.B. was inherently incredible and, thus, was insufficient to sustain his conviction. Contrary to defendant's position, when this Court undertakes a review of the sufficiency of the evidence, it does not interfere with the jury's assessment of the weight and credibility of witnesses or evidence. *Dunigan*, 299 Mich App at 582. Specifically, when the gravamen of a defendant's argument seeks to have this Court reweigh the credibility of witnesses, it must decline to do so in deference to the jury. *Eisen*, 296 Mich App at 331. "'[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented.'" *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012), quoting *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

Because sufficient evidence existed to sustain defendant's conviction of CSC I at trial, it is unnecessary to address his contention regarding the sufficiency of the evidence for his bindover. "[A] magistrate's erroneous conclusion that sufficient evidence was presented at the preliminary examination is rendered harmless by the presentation at trial of sufficient evidence to convict." *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002); see also *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004) ("If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover."). Defendant also asserts the trial judge at the preliminary examination involving M.B. was biased. A review of the record reveals nothing inherently inappropriate or suggestive of bias. It is the duty of a trial judge to control the proceedings and limit the introduction of evidence. See MCL 768.29 and MCR 2.513(B). In this instance, the trial court's interruptions were designed to control the courtroom, prevent any improper influence on the testimony of witnesses, respond to objections and clarify testimony or responses. Defendant's claim of bias or prejudice cannot be established merely because the trial court ultimately ruled against defendant and bound him over for trial. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009).

Defendant asserts a multitude of incidents comprising misconduct by the prosecutor during trial and closing arguments. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *Bennett*, 290 Mich App at 475. Because defendant did not object to the prosecutor's statements during

closing, other than to correct a misstatement regarding defendant's weight, or object to other evidence now complained of, the allegations of error are unpreserved. In general, this Court reviews claims of prosecutorial misconduct de novo. *Fyda*, 288 Mich App at 460. Unpreserved claims of prosecutorial misconduct are reviewed for outcome-determinative plain error. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). Claims of prosecutorial misconduct are reviewed on a case-by-case basis, with this Court examining the prosecutor's challenged remarks in context. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003).

We begin by addressing defendant's assertions of misconduct during the prosecutor's closing argument.

While emphasizing the discrepancy in size between J.H. and defendant in addressing defendant's allegation that he struck J.H. because she was attempting to steal from him, the prosecutor misstated defendant's weight as "260." Defendant immediately interrupted the prosecutor to indicate that his weight was "205." This misstatement was minor and was immediately corrected by defendant. In addition, the jury was able to observe defendant during trial and at the time of the statement to determine its accuracy. This corrected misstatement was not prejudicial. Further, any misstatement was cured by the trial court's instruction that the arguments of counsel did not comprise evidence. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). In addition, defense counsel specifically stated:

> I know the prosecutor does not like the defendant, but we still have to do our job. The prosecutor has done his job honestly and fairly, he has given Mr. Robinson a fair trial, he has not said I don't like him so let me give him an unfair trial. . . . No, he has not done any of that, he has honestly and fairly given Mr. Robinson a fair trial. He may have made a mistake about 205 pounds and 260 pounds but that doesn't change anything. Okay. We all make mistakes.

Defense counsel's acknowledgement and dismissal of this minor misstatement arguably constitutes a waiver extinguishing any claim of error. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Addressing defendant's implication that the women were fabricating the rape to frame defendant or retaliate against him, the prosecutor stated in closing:

> And yet he keeps finding himself in these positions, with these different women, I mean, at least 3 women have said he assaulted them, that he raped them, and that he inflicted injury upon them, and yet he says that, that's just a coincidence, that's just what prostitutes do is they make these lies up. Is that credible? Is that something that we are willing to believe that these people, these women just keep coming forward?

The prosecutor misspoke in that the evidence at trial indicated three women, including J.H. and M.B., had accused defendant of assault. The third individual did not assert rape. Consequently,

any reference that defendant had been accused of rape for this third individual was in error. However, again, this clearly comprises a simple misstatement by the prosecutor. The misstatement was minor, given the context and content of the entire argument. Further, the trial court instructed the jury that the arguments and statements of the attorneys were not evidence and could not be considered as such, correcting any potential prejudice. *Long*, 246 Mich App at 588. Moreover, "[j]urors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008).

In particular, defendant takes umbrage at the prosecutor's characterization of him as not credible and a narcissist. A prosecutor is not permitted to intentionally use inflammatory arguments to arouse prejudice, *People v Lee*, 212 Mich App 228, 247; 537 NW2d 233 (1995), or to express a personal opinion about a defendant's guilt, *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). Yet, prosecutors are afforded great latitude in their arguments and may argue the evidence and all reasonable inferences arising therefrom in relationship to their theory of the case. *Id*. at 282.

Contrary to defendant's contention, it was not improper for the prosecutor to comment on defendant's demeanor at trial and while testifying because this is a factor used to evaluate defendant's credibility. The prosecutor was commenting on defendant's theory of the case suggesting that he is the innocent victim of various prostitutes seeking to exact revenge for his failure to compensate them or for other slights. The prosecutor's statements were an attempt to draw reasonable inferences from the testimony as it related to defendant's theory of the case. A prosecutor's arguments are to be considered in light of the arguments posited by the defense. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). Any references by the prosecutor questioning the credibility of defendant's testimony were not statements of opinion but referred directly to the discrepancies between defendant's version of the events and that of the victims. Even if we were to construe the prosecutor's characterization of defendant as a narcissist as being improper, any prejudice from that remark was cured by the trial court's instructions to the jury.

Defendant also takes issue with the prosecution's reference to photographs of M.B. and the suggestion that the bruising in the photographs, which was documented days after the alleged assault, was consistent with how bruising routinely develops over time. This constituted a proper comment by the prosecutor on the evidence. Testimony was elicited regarding M.B.'s appearance immediately following the incident and the more distinct bruising pattern evidenced a few days later when she was photographed. These remarks were not improper because they were based on evidence and common sense and were relevant. See, generally, *People v Paquette*, 214 Mich App 336, 342-343; 543 NW2d 342 (1995). Defendant's contentions of prosecutorial misconduct premised on closing arguments are without merit.

Any affiliated claims of ineffective assistance of counsel due to the failure to object during closing argument are not meritorious. Indeed, defendant has failed to show that any errors that might have occurred affected the outcome of the proceedings.

Defendant sets forth additional allegations of prosecutorial misconduct during trial. Defendant again takes issue with the prosecutor's elicitation of testimony regarding M.B.'s later development of obvious bruising and the admission of photographs demonstrating her injuries.

-13-

We note that defense counsel stipulated to the admission of photographs of M.B. and questioned her on them extensively, including the extent of her injuries and the delay in obtaining the photographs. "A defendant should not be allowed to assign error to something that his own counsel deemed proper. To do so would allow a defendant to harbor error as an appellate parachute." *People v Breeding*, 284 Mich App 471, 486; 772 NW2d 810 (2009) (citation and quotation marks omitted).

Defendant implies misconduct by the prosecutor in suggesting that the later, obvious bruising was a natural development without medical substantiation. Testimony was elicited that described the extent of M.B.'s visible injuries close in time to the alleged event as distinguished from when she was photographed several days later. Whether the passage of time serves to reduce the probative value of the evidence goes to its weight and not its admissibility. See, generally, *People v Wager*, 460 Mich 118, 126; 594 NW2d 487 (1999). Based on the stipulation of defense counsel and the admissibility of the evidence, prosecutorial misconduct cannot be demonstrated. A finding of prosecutorial misconduct cannot be premised on a prosecutor's good-faith attempt to admit evidence at trial. *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003).

Defendant also contends the prosecutor engaged in misconduct by correcting M.B.'s testimony regarding which eye was injured in her conflict with defendant. Contrary to defendant's suggestion, nothing in the transcript suggests that the prosecutor was directing the witness's testimony or leading her to correct an erroneous statement. It was only when defense counsel asked for clarification for the record and the prosecutor acknowledged which eye M.B. was pointing to that M.B. spontaneously corrected her testimony. There exists no basis within this exchange to suggest improper conduct by the prosecutor.

Finally, defendant asserts the prosecutor committed misconduct by mischaracterizing evidence by playing only portions of his videotaped interview by police, suggesting the prosecutor contradicted his own witness and implied defendant lied regarding the amount of money spent on drugs. First, the record provided is arguably insufficient to enable this Court to address defendant's stated concern because a copy of the police interview has not been provided for content or comparison. Second, although defendant contends the prosecutor used only a portion of the evidence within his statement to police to dispute defendant's veracity on the value of the drugs procured, this comprised merely an ancillary matter at trial and defendant was not precluded during trial from cross-examining any witness on this issue, seeking to have the entire videotaped interview played for the jury, and testifying on his own behalf regarding the transaction. On cross-examination, defendant clarified the amount of money he spent on drugs with M.B. At this point, the prosecutor offered to play part of the DVD, and defendant responded, "Okay." When questioning resumed, defendant insisted that, while not absolutely sure if he indicated the full price of the drugs in his interview with police, he did provide M.B. with money, and that the correct amount "is in the police report and it is in the preliminary exam." Questioning then evolved into other facts regarding the sexual acts engaged in with M.B. and whether defendant included or omitted them in his police interview.

Based on the testimony elicited, defendant cannot legitimately assert the prosecutor mischaracterized the evidence, particularly given defendant's own uncertainty regarding the specificity of the information he provided during his police interview. Defendant further ignores

that the jury was free to believe or disbelieve, in whole or in part, any of the evidence presented by the prosecution. *Perry*, 460 Mich at 63. Rather than appearing as an intentional and improper attempt by the prosecutor to mislead the jury, the actual exchange demonstrates the prosecutor's effort to clarify the facts in evidence. See, generally, *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001).

Defendant also implies the existence of a conspiracy between the prosecutor, police, and the victims to secure defendant's conviction through any means available. Other than a vague and speculative assertion, defendant does not develop this argument by providing an affidavit or citation to evidence or law. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (citations and quotation marks omitted).

Defendant further contends that his trial counsel was ineffective for failing to object or otherwise challenge the alleged instances of prosecutorial misconduct. As noted previously, a claim of prosecutorial misconduct cannot be premised on a prosecutor's good-faith attempt to admit evidence at trial. Because prosecutorial misconduct did not occur, the failure of trial counsel to object cannot comprise ineffective assistance. When a prosecutor's comments are found to be proper, "any objection to the prosecutor's arguments would have been futile. Counsel is not ineffective for failing to make a futile objection." *Thomas*, 260 Mich App at 457.

Defendant raises additional allegations of ineffective assistance. Defense counsel is afforded wide discretion with regard to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Decisions with regard to what evidence to present and whether to call or question witnesses are presumed to constitute matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Id.*

Defendant first contends his trial counsel was ineffective for failing to secure the testimony of Detroit police officers that M.B. was acting as a prostitute on the day of the alleged events and for not securing the testimony of M.B.'s father to prove that she was a liar and prostitute. Similarly, defendant asserts trial counsel was ineffective for failing to secure testimony or evidence from M.B.'s previous employers that she functioned as a prostitute and/or table dancer. First, the evidence allegedly omitted is primarily speculative on the part of defendant because he offers no affidavits or pleadings to demonstrate that the testimony he asserts should have been obtained actually would have been obtained. Defendant has not demonstrated that the failure of defense counsel to secure or proffer such testimony and witnesses resulted in the failure to uncover valuable evidence that would have substantially benefited his case. See *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). Second, defendant was not deprived of a significant defense by the omission of this testimony because his accusation that M.B. was working as a prostitute and lied to police was presented to the jury through other witnesses, thereby rendering additional evidence merely cumulative. Third, defendant has failed to demonstrate that the failure to present this evidence did not comprise reasonable trial strategy. Defense counsel had and took advantage of multiple

-15-

opportunities during examination and cross-examination to attack the credibility of various witnesses and to call evidence into question. Defense counsel was treading a fine line between advocating his client's defense of consensual sexual contact and potentially engendering the animosity of the jury by being perceived to blame the victims for defendant's alleged behavior. Because defendant was not deprived of a substantial defense by the omission of this testimony and evidence, see *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990), and counsel's decision not to present certain witnesses comprises a matter of trial strategy that will not be evaluated in hindsight by this Court, the claim of ineffective assistance of counsel on these matters cannot be sustained.

Defendant also challenges defense counsel's failure to object to M.B. being a witness at trial based on her history of substance abuse. The record does not establish that M.B. was incompetent to testify at trial. M.B. acknowledged at the outset of her trial testimony her former history of addiction and asserted that she had been sober for the six month period leading up to trial. Counsel cannot be deemed ineffective for failing to raise meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant further challenges the competency of his counsel because during M.B.'s questioning by the prosecutor, he inadvertently referred to the incident involving M.B. as occurring in March rather than September and she did not correct him. As testimony progressed, the prosecutor apologized for his mistaken reference to March and the matter was corrected. Defendant cannot possibly demonstrate that such a misstatement, which was ultimately corrected, comprised outcome-determinative error or deprived him of a substantial defense.

Defendant further suggests trial counsel was ineffective for failing to elicit additional testimony regarding a statement allegedly made by M.B. when speaking with police suggesting she had been the victim of multiple assaults in the past. First, defense counsel did question M.B. on this statement. Even if defense counsel misconstrued the alleged statement to police as referencing only defendant, M.B. corrected him by denying the higher number and asserting, "He raped me three times." Decisions pertaining to the questioning of witnesses are presumed to comprise trial strategy and this Court will not "second guess counsel on matters of trial strategy, nor will [it] assess counsel's competence with the benefit of hindsight." *Horn*, 279 Mich App at 39.

Finally, defendant claims his counsel was ineffective for failing to pursue his right to a second polygraph. Defense counsel filed motions and engaged in hearings, asserting defendant's right to a second polygraph examination, which belies defendant's assertion that defense counsel simply acceded to the prosecutor's argument on this issue. The trial court specifically denied this request. Based on the trial court's ruling, defense counsel had no other option than to proceed to trial because any attempt to continue to raise this issue, given the trial court's decision, would have been futile.

Defendant next asserts error in the scoring of offense variables (OVs). *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), explains the applicable standards of review:

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the

-16-

evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations and footnotes omitted.]

Defendant appears to contend that OV 3 was improperly scored at 10 points, asserting M.B. did not require medical treatment. The scoring for OV 3 is encompassed in MCL 777.33. The trial court did not err in assessing 10 points for this OV. M.B. testified at the trial involving J.H. that defendant struck her more than once in the face and photographs immediately after the incident, and several days later, demonstrated swelling and bruising in the facial area. "'[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Further, M.B. was examined and bruises near her right eye were measured and documented, along with bruising in the anal area. Because the documented injuries to M.B. comprised bodily injury and are of the type that would generally necessitate medical evaluation and treatment, and a nurse testified that M.B. indicated that she was in "extreme pain," the trial court did not abuse its discretion in assessing 10 points for this variable.

Defendant further misconstrues the scoring of this variable as having been improperly based on an uncharged crime of assault with regard to M.B.. The physical injury to M.B. was in conjunction with the charges of CSC III and properly scored under OV 3.

Defendant also contests the assessment of 15 points for OV 8 in the CSC I case because J.H. voluntarily accompanied defendant and no evidence existed to suggest she was detained beyond the time necessary to commit the offense. The scoring of OV 8 is delineated in MCL 777.38. In asserting that this offense variable was wrongly scored, defendant relies on his testimony of how the events transpired in determining the factual predicate for scoring this variable. He contends that any physical assault on J.H. was attributable to her attempted theft and, therefore, she was not "held captive beyond the time necessary to commit the offense" of rape. MCL 777.38(1)(a). In contrast, J.H. testified that defendant struck her in the face almost immediately upon entry into the motel room and that she was rendered unconscious for hours.

Contrary to defendant's arguments, this Court in *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), has started:

> OV 8 requires the trial court to assess 15 points if [a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.] To establish asportation, the movement of the victim must not be incidental to committing an underlying offense. Asportation does not require force; asportation for the purpose of OV 8 may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger. A place of greater danger includes an isolated location where criminal activities might avoid detection. [Citations and quotation marks omitted.]

Although J.H. went willingly with defendant to the motel room, for purposes of scoring OV 8, taking J.H. to the motel room could be construed as a place of greater danger because it resulted

in defendant being able to isolate J.H. and assuring that his physical assault upon her would preclude outside scrutiny or detection. *Id.* Further, the lapse in time estimated between the arrival at the motel and leaving that location suggests a detention beyond the time required to commit the alleged rape. When this time lapse is coupled with J.H.'s lack of transportation and diminished ability to see and navigate her environment safely due to the beating admittedly inflicted by defendant, the trial court's assessment of 15 points for this variable was not an abuse of discretion.

Defendant contends the trial court erred in correcting his sentence to include lifetime electronic monitoring. This Court reviews de novo issues pertaining to the interpretation and application of a statute. *People v King*, 297 Mich App 465, 481-482; 824 NW2d 258 (2012).

Electronic monitoring is defined in MCL 791.285(3) as "a device by which, through global positioning system satellite or other means, an individual's movement and location are tracked and recorded." MCL 750.520n(1) provides:

> A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953, 1953 PA 232, MCL 791.285.

Defendant was convicted of CSC I, and pursuant to MCL 750.520b(2)(d): "In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n."

As defendant acknowledges, this Court in *People v Brantley*, 296 Mich App 546, 558-559; 823 NW2d 290 (2012), determined:

> [W]e read MCL 750.520n(1) as requiring the trial court to impose lifetime electronic monitoring in either of two different circumstances: (1) when any defendant is convicted of CSC-I under MCL 750.520b, and (2) when a defendant who is 17 years old or older is convicted of CSC-II under MCL 750.520c against a victim who is less than 13 years old. In other words, we hold that any defendant convicted of CSC-I under MCL 750.520b, regardless of the age of the defendant or the age of the victim, must be ordered to submit to lifetime electronic monitoring. MCL 750.520b(2)(d); MCL 750.520n(1). In sum, the trial court did not err by imposing the requirement of lifetime electronic monitoring on the basis of defendant's CSC-I conviction.

Notably, the Michigan Supreme Court has denied leave to appeal in *Brantley* and subsequently in *King*, which also involved the issue.[6]

---

[6] *People v Brantley*, 296 Mich App 546; 823 NW2d 290, lv den 493 Mich 877 (2012); *People v King*, 297 Mich App 465; 824 NW2d 258 (2012), lv den 493 Mich 938 (2013).

In accordance with the restrictions of MCR 7.215(C), defendant's contention of error is lacking in merit. Specifically, MCR 7.215(C)(2) states:

> A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.

Based on the existence of published and precedential rulings from this Court establishing the propriety of including lifetime electronic monitoring to the sentences of convicted CSC I offenders, there is no basis in law to support defendant's contention of error on this issue.

Defendant also contends he was denied pertinent discovery by the trial court in a conspiracy with the prosecutor. Specifically, he argues he was granted discovery of J.H.'s medical records, but that no such records were forthcoming. He further contends that he was improperly denied access to the juvenile and criminal histories of his victims, their medical and psychiatric or psychological records, police reports, photographs, and the DVD from the motel in the J.H. case by a failure to provide these materials or their removal from the discovery packet provided to defense counsel.

Defendant filed motions in the lower court for discovery, the majority of which were denied by the trial court, preserving the discovery matters for appellate review. Defendant did not, however, specifically raise a *Brady*[7] violation claim or raise a claim of judicial bias below, rendering these claims unpreserved for appellate review.

"A trial court's decision regarding discovery is reviewed for [an] abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). This Court reviews de novo a defendant's claim that the prosecutor's failure to disclose material exculpatory evidence violated his or her constitutional right to due process. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). Unpreserved *Brady* violation claims are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 752-753, 763-764. Unpreserved challenges of judicial bias are reviewed for plain error affecting substantial rights. *Id*. at 763-764.

A criminal defendant is afforded a due process right of access to certain information possessed by the prosecution if that evidence could potentially lead a jury to entertain a reasonable doubt about a defendant's guilt. *Brady v Maryland*, 373 US 83, 86-87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); see also *Giglio v United States*, 405 US 150, 154; 92 S Ct 763; 31 L Ed 2d 104 (1972). To establish a *Brady* violation, a defendant is required to demonstrate that: (1) the state possessed evidence favorable to the defendant, (2) the state suppressed the evidence, and (3) "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See *Youngblood v West Virginia*, 547 US 867, 869-870; 126 S Ct 2188; 165 L Ed 2d 269 (2006) (citation and quotation marks omitted).

---

[7] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

In juxtaposition to the rule in *Brady* are the rules and preclusions pertaining to discovery in criminal matters. In *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447; 722 NW2d 254 (2006), this Court held that "discovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by [the Michigan] Supreme Court, MCR 6.201." Referencing the ruling of the Michigan Supreme Court in *Phillips*, 468 Mich at 593, this Court concluded that *Phillips* had held that "unless the [court] rule requires production of the information or the party seeking discovery shows good cause, a trial court is without authority to mandate discovery." *Greenfield*, 271 Mich App at 448-449. Specifically:

> Unlike in civil litigation, in which the court rules permit far-reaching discovery limited only by the relevancy of the information sought and whether it "appears reasonably calculated to lead to the discovery of admissible evidence," discovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201. Indeed, . . . our Supreme Court has plainly stated that MCR 6.201 governs and defines the scope of criminal discovery in Michigan. [*Id*. at 447 (footnotes and citations omitted).]

The majority of the information sought by defendant pertaining to photographs of the victims, the DVD from the motel, the police reports, etc., does not comprise information subject to mandatory disclosure by the prosecutor because it does not encompass exculpatory information. Rather, these documents or items place defendant with the victims and corroborate the victims' respective versions of events with regard to the violent acts of defendant. Consequently, this evidence does not comprise *Brady* material.

The prosecutor contested the release of medical or psychological records for the victims not pertinent to the specific allegations and indicated he did not have copies of the medical records and was unaware of the existence of any psychological records for the victims. Defendant has come forward with no evidence or pleading to suggest that this representation by the prosecutor was false. Instead, he blatantly asserts that such materials were removed and made unavailable to defendant through a conspiracy. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) (citation and quotation marks omitted). Further, defense counsel's request was speculative that such records would somehow be exculpatory or useful in his client's defense and was more in the nature of a forbidden "fishing expedition." *People v Maranian*, 359 Mich 361, 368; 102 NW2d 568 (1960). We particularly find that defendant's contention questioning J.H.'s assertion of loss of sight in one eye due to defendant's assault is more than distasteful given the testimony that J.H. actually lost the entire eye due to the beating inflicted by defendant.

Defendant's assertions are further belied by the lower court record, which indicates that defendant was provided access to a "CCH review" of the criminal histories of the victims. As

such, defendant had access to the information requested regarding the criminal histories of the victims for possible impeachment use.

Defendant's contentions of discovery and/or *Brady* violations are without support in the lower court record and are merely comprised of defendant's own blatant speculation. Other than defendant's imagination, there is nothing to suggest a conspiracy or improper conduct by either the trial court or the prosecutor. Because defendant has failed to demonstrate any inappropriate preclusion of discovery or a violation of *Brady*, his assertions of prosecutorial misconduct and judicial bias cannot be sustained.

Similarly, defendant's contention that counsel was ineffective regarding discovery is without support in the record. Defense counsel filed several motions for the disclosure of information and evidence, some of which were granted and others that were denied. There is nothing in the record to suggest that information or evidence that existed and was approved for discovery was not provided or disclosed to defense counsel. Defense counsel's decision whether to pursue or use certain information or evidence is presumed to encompass trial strategy. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (citation and quotation marks omitted). In addition, there is no support for defendant's contention that had additional materials been provided, the outcome of the trial would have been different.

Defendant contends the trial court abused its discretion in failing to appoint him alternative counsel for trial. The reason underlying his argument is primarily defendant's assertion that appointed counsel lied by indicating he was not appointed or serving as defendant's counsel at the time of the polygraph examination.

A trial court's decision regarding a request for the substitution of counsel will not be disturbed absent an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id*. (citations and quotation marks omitted).

Addressing the substitution of counsel, this Court has explained:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991) (citations omitted).]

Defendant acknowledged that new trial counsel would be his fourth attorney in this matter. Defendant first indicated a preference for the appointment of new counsel less than a

month before trial was scheduled to begin. Although defendant indicated concern with his counsel's performance, it appears to have been associated with the failure to procure a second polygraph. At a pretrial hearing, the trial court indicated it would permit defense counsel to file a motion for a second polygraph and voir dire his client on a proposed plea. Defendant, although having the opportunity as the proceedings continued, did not reassert any dissatisfaction with counsel's performance. Despite his attendance at other court proceedings in the interim, it was only on the first day of trial that defendant again asserted his desire for other counsel. The trial court denied the request, indicating the experience and credentials of defendant's counsel.

Defendant makes several transcript references in support of his contention that defense counsel was untruthful by indicating he was not appointed at the time of the polygraph. Our review of the lower court files does not reveal a date when the polygraph examination was attempted. Based on the record, it appears that the polygraph examination occurred at some point following defendant's arrest on the CSC III charges, premised on the involvement of the Roseville Police Department in conducting the examination. Defendant was arrested on the CSC III charges on or about September 16, 2011. Initially, defendant was appointed Donald Cook as his counsel. Cook's appointment was later rescinded and Adil N. Haradhvala was subsequently appointed as defendant's counsel for both lower court files in November 2011. Later, Haradhvala indicated that the failed polygraph occurred before he was appointed as defendant's counsel. When defendant was permitted by the trial court to explain what had transpired, the following exchange occurred:

> *Defendant:* Well let me finish. So when he did that, the questions he read me had nothing to do with criminal sexual conduct. I told him I wanted to speak to *a lawyer* before we go any further and that is when he didn't, they didn't like that.

> *Court:* But weren't you represented by a lawyer at that point.

> *Defendant: No, I was not.*

> *Court:* He was given a polygraph before.

> *Defendant:* Yes.

> * * *

> *Defendant:* He wanted to put more charges on me *without, without me being represented by an attorney* is what they wanted to do and then I come here. [Emphasis added.]

Defendant's statements and responses to the trial court contradict his assertions on appeal. "Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue." *People v Griffin*, 235

Mich App 27, 46; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007).[8]

Defendant contends that based on the number of errors identified on appeal, he was denied his right to a fair trial and due process. "This Court reviews a [cumulative error issue] to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). This Court reviews unpreserved issues for plain error. See *People v Conley*, 270 Mich App 301, 305; 715 NW2d 377 (2006).

In accordance with *Knapp*, 244 Mich App at 388:

> The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal. In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence. In other words, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial. [Citations omitted.]

"Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Finally, defendant challenges the trial court's denial of his request to withdraw his pleas in the CSC III cases, asserting the pleas were not knowing and voluntary, that his sentences were contrary to the plea agreement, and that there were procedural deficiencies in the plea process, including the failure to verify his status as a second habitual offender for enhancement of sentencing.

This Court reviews a trial court's denial of a defendant's motion to withdraw a guilty plea for an abuse of discretion. *People v Harris*, 224 Mich App 130, 131; 568 NW2d 149 (1997).

---

[8] At any rate, the trial court did not abuse its discretion in denying defendant's request for a substitution of counsel on the first day of trial, or even a few weeks before. First, substituting counsel at such a point likely would have (and in the case of the first day of trial, certainly would have) effectuated a disruption of the judicial process and required an adjournment for new counsel to familiarize himself or herself with this very serious case and the witnesses and evidence. Moreover, defendant has failed to demonstrate good cause for substitution of counsel because he and his defense counsel had developed a legitimate difference of opinion "with regard to a fundamental trial tactic." *Mack*, 190 Mich App at 14. Rather, defendant merely appears piqued due to his counsel's failure to procure defendant a second polygraph examination.

There is no absolute right to withdraw an accepted guilty plea. *People v Gomer*, 206 Mich App 55, 56; 520 NW2d 360 (1994). The burden is on the defendant to establish a basis for withdrawing a plea. See *Harris*, 224 Mich App at 131; see also MCR 6.310(C).

Defendant's contention regarding the failure of the trial court to verify his status as a second habitual offender cannot be sustained. Verification of a defendant's status as an habitual offender is governed by MCL 769.13(5). The prosecutor filed the requisite notice of second habitual offender status premised on a 2006 conviction. This offense was also contained in the presentence investigation report (PSIR) used at sentencing. At sentencing, defense counsel indicated concurrence with the factual content of the PSIR and defendant verbally concurred with this statement by his counsel. Defense counsel also confirmed at sentencing:

> The other thing, Judge, that I wanted to mention was the court, when they took the plea to criminal sexual conduct third degree stated as part of the Cobb's [sic] that it would sentence Mr. Robinson as a regular offender, even though he was pleading as a habitual second offender.

Consequently, the trial court sufficiently complied with MCL 769.13(5)(d) for the establishment of defendant's second habitual offender status.

Defendant further takes issue with all aspects of the plea procedure to assert that it was not knowing and voluntary.

The procedures governing the acceptance of a guilty plea are delineated within MCR 6.302. MCR 6.302(A) provides:

> [t]he court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

In turn, the procedures specified under MCR 6.302(B) to (E) are constructed to permit a court to determine whether a defendant's plea is understanding, voluntary, and accurate:

> Under MCR 6.302(B), which relates to an understanding plea, the court must speak directly to the defendant and determine that he or she understands the name of the offense and the maximum possible prison sentence, the trial rights being waived, and loss of the right to appeal. Pursuant to MCR 6.302(C), which relates to a voluntary plea, the court must make inquiries regarding the existence and details of any plea agreements and whether the defendant was promised anything beyond what was in the agreement, if any, or otherwise. The court must also ask the defendant whether he or she had been threatened and if the plea was his or her choice. MCR 6.302(D), which relates to an accurate plea, requires the court to establish a factual basis for a guilty plea and state why a plea of nolo contendere is appropriate. Finally, under MCR 6.302(E), the court must make additional inquiries, including whether the prosecutor and defense counsel are "aware of any promises, threats, or inducements other than those already

-24-

disclosed on the record, and whether the court has complied with subrules (B)-(D)." [*People v Plumaj*, 284 Mich App 645, 648 n 2; 773 NW2d 763 (2009).]

Contrary to defendant's contention, the record demonstrates that the trial court complied with the requirements of MCR 6.302. In the lower court file pertaining to the CSC III charges, there is an advice of rights form pertaining to a circuit court plea, signed by defendant. Defendant also signed a referral to probation form, indicating his acceptance of the plea.

The preliminary examination transcript of October 5, 2011, was used to satisfy the elements of the crimes and CSC III charges, with that record stipulated to by defense counsel. Defendant was then sworn in and addressed directly by the trial court. After confirming defendant's name, age, and ability to read, write and understand English and the absence of any medications or other substances that would impede his understanding of the proceedings, the following exchange occurred:

> *Court:* My understanding is that you are going to plead no contest to two counts of CSC third today on this file, 11-3549-FH. And part of that plea I am going to sentence you on the case that you have already been tried. And that was CSC first.

> *Defense Counsel:* Yes, Judge.

> *Court:* . . . . The Cobb's [sic] agreement will be a maximum of 14 years on the minimum. Is that everyone's understanding[?]

> *Prosecutor:* Yes, Your Honor.

> *Defense Counsel:* Yes, Judge.

> *Court:* All right. Do you understand that[?]

> *Defendant:* Yes.

> *Court:* Has anyone promised you anything else other than what has been put on the record[?]

> *Defendant:* No.

When defendant hesitated in responding to the trial court's query of whether "anyone forced you to plead no contest," the trial court proceeded:

> *Court:* Well here. There are two kinds of ways. Do you like pleading the no contest? No. Right? But has anyone forced you; put a gun to your head to plead no contest[?]

> *Defendant:* Well it is not -- I mean, I don't know. It is not a gun because that would -- you can't say that and mean that literally. But I will put it this way, Your Honor, I asked early on in these cases I asked for a different attorney

-25-

because me and my attorney we were not seeing eye to eye and you knew that. I spoke to you --

* * *

*Court:* Mr. Robinson this is real easy. You are going to be sentenced on what day on the other case [June 26]. . . . If you don't want to go through this, we will just sentence you on that case. So I am going to ask you again. Has anyone forced you to plead no contest to the charges on these counts[?]

*Defendant:* No.

*Court:* All right. . . . Are you freely pleading no contest[?]

*Defendant:* Yes.

*Court:* All right. Have you gone over the Advice of rights form with your attorney[?]

*Defense Counsel:* Did you sign the form[?]

*Defendant:* Yes, I signed the form.

*Court:* Okay. Those are the rights that you would have if you went to trial. But since you are not going to trial on this file, you are going to forego those rights. Do you understand that[?]

*Defendant:* Yes.

*Court:* Do you understand that you are pleading to two counts of CSC third. Are those 15 year felonies[?]

When the prosecutor confirmed, but indicated with the habitual offender enhancement it would be "21 year felonies," defendant interjected, "He told me that the habitual was off the record." The prosecutor indicated, as a matter of policy, that they do not dismiss the habitual offender notice. Following a brief exchange with defense counsel, the trial court proceeded with its inquiry:

*Court:* He was found guilty on the other file, which is the habitual, which is life. It doesn't matter. . . . I will tell you, part of the Cobb's [sic] on this file I will not sentence you on the top end to any habitual sentence. Do you understand[?] It will be just as if you were just pleading no contest to CSC third. . . . He is pleading to the habitual, but I am not -- On sentencing date, part of your Cobb's [sic] on this file, I will sentence you to whatever the top could be.

*Prosecutor:* 15 years.

*Court:* 15 years.

-26-

> *Defense Counsel:* The court will select a minimum within the guidelines and the maximum will be 15 years.
>
> *Defendant:* Yes.

The trial court informed defendant of his appellate rights and confirmed his citizenship. Citing specifically to the October 5, 2011, preliminary examination transcript pertaining to the CSC III charges, the trial court found "that the charges of CSC third, two counts, are made out in that preliminary transcript." Both the prosecutor and defense counsel concurred. The trial court proceeded to engage counsel and defendant as follows:

> *Court:* Has the court complied with MCR 6.302[?]
>
> *Prosecutor:* Yes, Your Honor.
>
> *Defense Counsel:* Yes, Your Honor.
>
> *Court:* . . . And again, with respect to CSC, the two counts of CSC third on this file how do you plead[?]
>
> *Defense Counsel:* No contest.
>
> *Defendant:* No contest.
>
> *Court:* All right. The court will accept your no contest plea.

Sentencing on both files proceeded on June 26, 2012. The prosecutor recounted the *Cobbs* agreement, "that if the Defendant were to plead guilty to both offenses, that being criminal sexual conduct in the third degree. . . . the Court would limit his exposure to prison for 14 years; 14 years of incarceration on both files," or the equivalent of 168 months. Noting certain scoring challenges pertaining to the CSC I charges, the prosecutor indicated the guidelines on the CSC I would be within the *Cobbs* agreement. Defendant and his counsel both confirmed the accuracy of the content of the PSIR, with defense counsel explaining challenges to certain aspects of the scoring for the CSC III charges. Defense counsel reminded the trial court that in accepting the plea on the CSC III charges, the trial court indicated "it would sentence Mr. Robinson as a regular offender, even though he was pleading as a habitual second offender. In other words, the maximum sentence would be 180. And the guidelines would be used for the regular offender, and not be a habitual offender."

"[F]or allocution purposes" defense counsel requested the court to follow the *Cobbs* agreement on the CSC I charges, with the agreement being that "the minimum sentence would not exceed 14 years . . . ." Defense counsel stated: "You have agreed that you're not going to exceed 15 years on the maximum [on the CSC III offenses]. The minimum is going to be set by the guidelines."

The prosecutor stated "[t]hat if the Court were to sentence him to 14 years [the maximum for CSC I] would have to be at least 21 years," but suggested "the Court with clear conscience could sentence him to a maximum of 30 years." Specifically, at the June 12, 2012, hearing

regarding the *Cobbs* agreement, defense counsel indicated that on the CSC I offense, the sentence would be a minimum of no more than 14 years and "a maximum sentence that is decided by the court."

Defendant was permitted to allocute. While he apologized "for beating" J.H., he maintained his innocence to the charge of rape. Defendant attributed his actions to being a "major alcoholic" at the time and the recent loss of his parents. Defendant further asserted:

> Am I'm not trying to make light of what happened that day, but she is no angel. What we did was mutual. Although when I punched her, that part wasn't mutual, and I regret that I did it I'm sorry for that, and I'm guilty of that.

Although noting defendant's "violent background" and the "very violent" nature of his behavior, the trial court indicated it would "abide" by the *Cobbs* agreement. On the CSC I charges, the trial court sentenced defendant for CSC I to a term of imprisonment of 168 months (14 years) to 400 months. For the AWIGBH charge, the trial court sentenced defendant to imprisonment for a term of 80 months to 120 months. For the CSC III charges, the trial court sentenced defendant to "100 months to 15 years, 180 months." All counts were deemed to run concurrently with one another.

Contrary to defendant's assertions on appeal, the trial court procedurally complied with the requirements of MCR 6.302 and with the *Cobbs* agreement.

Although defendant contends his trial counsel threatened him with the possibility of 30 years in prison if he did not accept the plea agreement, he stated at the plea hearing that no one was forcing him to plead and answered "Yes," when asked, "Are you freely pleading no contest[?]" Despite being given the opportunity, defendant never stated or implied that his attorney had informed him that the trial court would sentence him to 30 years in prison if he did not accept the plea. His only suggestion of having been "threatened" was the trial court's refusal to grant his request for alternative counsel. At the time of sentencing, defendant voiced no lack of willingness to proceed. We find no basis for reversal.[9]

Affirmed.

/s/ David H. Sawyer
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[9] While the court did not address the mandatory lifetime electronic monitoring at the plea proceeding, defendant was subject to lifetime electronic monitoring in conjunction with the CSC I conviction, not the CSC III charges to which he was pleading. At any rate, we reiterate that defense counsel specifically acknowledged that the trial court had abided by the requirements of MCR 6.302.